IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEVIN ISAAC MONTOYA PALACIOS, | * |
| | * |
| Petitioner, | * |
| v. | *    Civil Action No. GLR-25-4045 |
| | * |
| NIKITA BAKER, et al., | * |
| Respondents. | * |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Kevin Isaac Montoyo Palacios's ("Montoyo Palacios" or "Petitioner") Amended Petition for Writ of Habeas Corpus and Request for Temporary Restraining Order ("TRO") under 28 U.S.C. § 2241 (ECF No. 4) and Respondents Nikita Baker, Pamela Jo Bondi,[1] Todd M. Lyons, Kristi Noem's (collectively "Respondents" or "the Government") Motion to Dismiss (ECF No. 15). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Petition in part and deny it in part and deny the Motion as moot.

---

[1] The Government contends that the Attorney General is not a proper respondent. (Mem. L. Supp. Response & Mot. Dismiss ["Response"] at 13–14, ECF No. 15). For the reasons stated in Solis Nolasco v. Kristi Noem, No. GLR-25-3847, 2026 WL 25002, at \*7–8 (D.Md. Jan. 5, 2026), the Court finds that the Attorney General is a proper respondent in this case.

## I.  BACKGROUND

Petitioner Kevin Isaac Montoyo Palacios is a citizen and native of El Salvador. (Am. Pet. Writ Habeas Corpus ["Am. Pet."] ¶ 1, ECF No. 4). He fled from El Salvador to the United States out of fear of gangs and police harassment in El Salvador. (Id. ¶ 12). U.S. Border Patrol agents encountered him at or near Hebronville, Texas on April 25, 2016. (Mem. L. Supp. Response & Mot. Dismiss ["Response"] at 2, ECF No. 15).[2] The U.S. Department of Homeland Security ("DHS") issued a Notice to Appear against Montoyo Palacios, charging him with inadmissibility under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Id. at 2–3). Petitioner was placed in removal proceedings and, on July 21, 2016, was released on bond in the amount of $1,500. (Id. at 3). Petitioner's removal proceedings were held on September 11, 2023, at which an immigration judge ("IJ") from the Executive Office of Immigration Review ordered Petitioner to be removed to El Salvador; however, in that same Order, the IJ granted Petitioner withholding from removal to El Salvador under the Convention Against Torture. (Id. (citing Removal Order at 1, ECF No. 15-1)). Petitioner alleges that after he was released on bond, he was placed under supervision and that he complied with the supervision requirements for years. (See Reply Mem. Opp'n Resp'ts' Mot. Dismiss & Supp. Pet. Writ Habeas Corpus ["Reply"] at 4, ECF No. 19).

On December 8, 2025, Montoyo Palacios attended a scheduled Immigration and Customs Enforcement ("ICE") check-in in Baltimore. (Response at 3). Officers served

---

[2] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

2

Montoyo Palacios with a Notice of Revocation of Release, which revoked his supervision and states that ICE intends to remove him to Mexico (Notice Revocation Release at 2, ECF No. 15-3), and a Notice of Removal, which notified Montoyo Palacios of ICE's intent to deport him to Mexico (Notice Removal at 1, ECF No. 15-2). ICE officials conducted an informal interview on December 8, 2025, but Montoyo Palacios declined to make a statement. (Response at 9; Sworn Statement at 1, ECF No. 15-4). Montoyo Palacios was transferred to the Christian County Jail in Hopkinsville, Kentucky, where, as of January 16, 2026, he remains detained. (Response at 1).

On December 11, 2025, Montoyo Palacios filed the instant Amended Petition for Writ of Habeas Corpus and request for TRO under 28 U.S.C. § 2241. (ECF No. 4).[3] Respondents filed a consolidated Response and Motion to Dismiss on December 30, 2025. (ECF No. 15). Montoyo Palacios filed a Reply in Opposition to the Government's Motion and in Support of his Petition on January 12, 2026. (ECF No. 19).

## II.   DISCUSSION

### A.   **Standard of Review**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent

---

[3] Petitioner captions his pleading as a "Petition for a Writ Of Habeas Corpus and TRO Pursuant to 28 U.S.C. § 2241." (ECF No. 4). Neither party briefs the TRO factors in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), so the Court declines to construe this Petition in that light.

from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

**B.**     **Analysis**

Petitioner argues that his continued detention violates 8 U.S.C. § 1231 and that his removal to a third country without an opportunity to express his fear of persecution in that country violates his due process rights. (Reply at 3, ECF No. 19). The Government contends that ICE is authorized to detain and remove Petitioner under 8 U.S.C. § 1231(a)(6), that his continued detention is constitutionally permissible, and that he has received all process due to him under law. (Response at 4–13). The Court will address each issue in turn.

**1.**     **Petitioner's Detention Under 8 U.S.C. § 1231(a)**

There is no dispute that Montoya Palacios is detained under 8 U.S.C. § 1231(a). (See Reply at 3). Section 1231(a) provides that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (the "removal period") and that "the Attorney General shall detain the alien" during the removal period. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Except when the noncitizen is detained in a case outside the immigration process or when a court orders a stay of removal, the removal period begins when the removal order becomes administratively final. Id. § 1231(a)(1)(B). If the noncitizen does not leave or is not removed during the removal period, then the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General" pending their removal. Id. § 1231(a)(3). But certain noncitizens,

including those who are inadmissible under 8 U.S.C. § 1182, may be detained beyond the removal period. Id. § 1231(a)(6).

Montoya Palacios argues that his continued detention is no longer permissible. (Reply at 3). In Zadvydas v. Davis, the Supreme Court considered whether the Government may detain a noncitizen under 8 U.S.C. § 1231(a)(6) "indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." 533 U.S. at 682. The two noncitizen-petitioners in Zadvydas received removal orders and had been detained well beyond their removal periods under 8 U.S.C. § 1231(a)(6), partly because their native countries and other countries to which they had connections had refused to accept them. Id. at 684–86. The petitioners challenged the extent of the Attorney General's authority to detain them on a seemingly indefinite basis given the unlikelihood of the Government securing their removal. Id. at 684–86, 688.

In assessing that authority, the Supreme Court recognized that "Congress has 'plenary power' to create immigration law, and that the Judicial Branch must defer to Executive and Legislative Branch decisionmaking in that area." Id. at 695. "But that power," the Court explained, "is subject to important constitutional limitations." Id. And "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." Id. at 696 (citation omitted). Considering the significant liberty interest at stake and the lack of "congressional intent to authorize indefinite, perhaps permanent, detention," id. at 699, the Court held that a noncitizen's detention pending removal is presumptively reasonable only for six months (inclusive of

the removal period), after which, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing," id. at 701.

Here, Montoya Palacios likely contends that his presumptively reasonable period expired on or around March 11, 2024—six months after his withholding of removal order became administratively final on September 11, 2023—and that the Government has provided no factual basis to believe that his removal will occur in the reasonably foreseeable future. (Am. Pet. ¶¶ 13–16; Reply at 3–4). Specifically, Petitioner argues that he has "lived in the United States for years on an Order of Supervision, complied with ICE reporting, and posed no flight risk or danger." (Reply at 4). He adds that "ICE revoked his release abruptly at a routine check-in, without individualized findings that detention was necessary or that removal was imminent. Re-detention under these circumstances raises the very constitutional concerns Zadvydas sought to avoid: arbitrary confinement untethered to a realistic removal plan." (Id.). Respondents contend that Montoya Palacios's argument is premature because he has been detained only since December 8, 2025, and that even if his argument is proper at this juncture, he has not provided a good reason to believe that there is no significant likelihood that he will be removed in the reasonably foreseeable future. (Response at 6–8). For the reasons set forth below, the Court finds that Montoya Palacios's argument is not premature and that he has met the "good reason" requirement under Zadvydas.

### a. The Six-Month Presumption

The Government first suggests that Montoya Palacios's argument under Zadvydas is "premature" because he has been detained only since December 8, 2025. (Id.). The premise of this argument is that Montoya Palacios's six-month period restarted when he was detained on December 8, 2025. Some Courts agree with that premise, finding that the six-month period restarts upon re-detention, see, e.g., Abedi v. Carter, No. 25-3141-JWL, 2025 WL 3209009, at *1 (D.Kan. Oct. 6, 2025), or pauses while the noncitizen is not detained and resumes upon re-detention, see, e.g., Rodriguez-Guardado v. Smith, 271 F.Supp.3d 331, 335 n.8 (D.Mass. 2017) (citation omitted). Other courts, however, "broadly agree that 'the six-month period [under Zadvydas] does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again.'" Diaz-Ortega v. Lund, No. 1:19-CV-670-P, 2019 WL 6003485, at *7 n.6 (W.D.La. Oct. 15, 2019) (quoting Sied v. Nielsen, 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D.Cal. Apr. 19, 2018)), report and recommendation adopted, No. 1:19-CV-670-P, 2019 WL 6037220 (W.D.La. Nov. 13, 2019); Villanueva v. Tate, 801 F.Supp.3d 689, 702 (S.D.Tex. 2025) ("The government's contention that it may avoid the holding of Zadvydas and re-start the six-month presumptively constitutional detention clock by simply releasing and then re-detaining a noncitizen has no basis in either the statutes, the regulations, or Zadvydas itself."); Zavvar v. Scott, No. TDC-25-2104, 2025 WL 2592543, at *4 (D.Md. Sept. 8, 2025) ("[T]here is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period.").

This Court agrees with the latter position and finds that Montoyo Palacios's six-month period did not restart upon his re-detention on December 8, 2025. See Cordon-Salguero v. Noem, No. GLR-25-1626, Mot. Hr'g Tr. 33:23–34:4 (D.Md. June 23, 2025) (ECF No. 21) (finding that the six-month period was not tolled upon petitioner's release from detention in 2018). Therefore, Montoyo Palacios's six-month period expired in March 2024, and his challenge against his detention is not premature.[4]

### b. The Likelihood of Montoyo Palacios's Removal

The Government next argues that, even if Montoyo Palacios's argument is not premature, he has not provided good reason to believe that his removal is not likely to occur in the reasonably foreseeable future. (Response at 78). This Court disagrees, and adopts the reasoning set forth in Solis Nolasco v. Kristi Noem, No. GLR-25-3847, 2026 WL 25002, at *4–6 (D.Md. Jan. 5, 2026), and concludes that, based on the record before the Court, removal does not appear likely to occur in the reasonably foreseeable future. Montoyo Palacios's continued detention, therefore, violates his due process rights as interpreted under Zadvydas.

### 2. Montoyo Palacios's Removal to a Third Country

With respect to Montoyo Palacios's dispute over removal to a third country, the Court again incorporates the reasoning set forth in Solis Nolasco by reference and

---

[4] As this Court explained in Cruz Medina v. Noem, 794 F.Supp.3d 365 (D.Md. 2025), the six-month presumption of reasonableness shifts the burdens between the Government and the noncitizen-detainee, but it does not prohibit judicial review of a noncitizen's detention for six months. Id. at 375–76. Thus, even if Montoyo Palacios's six-month period had not yet expired, his Petition still would not be premature.

concludes that Montoyo Palacios's claim regarding his removal to Mexico is more appropriately addressed in D.V.D. v. U.S. Department of Homeland Security, 778 F.Supp.3d 355 (D.Mass. 2025), and will deny the Amended Petition as to that claim without prejudice to seeking the same or similar relief through the D.V.D. litigation. I.V.I. v. Baker, No. JKB-25-1572, 2025 WL 1519449, at *2 (D.Md. May 27, 2025); see also Tanha v. Warden, Balt. Det. Facility, No. JRR-25-2121, 2025 WL 2062181, *8 (D.Md. July 22, 2025) (finding that third country removal claim more appropriately addressed in D.V.D. and denying without prejudice); Ghamelian v. Baker, No. SAG-25-2106, 2025 WL 2049981, at *3, 5 (D.Md. July 22, 2025) (same).

### 2. Attorneys' Fees

Finally, Montoyo Palacios requests attorneys' fees and costs under the Equal Access to Justice Act ("EAJA") (Am. Pet. at 6), which allows a court to "award reasonable fees and expenses of attorneys" to a "prevailing party in any civil action brought by or against . . . any agency or any official of the United States acting in his or her official capacity . . . ." 28 U.S.C. § 2412(b). In Obando-Segura v. Garland, 999 F.3d 190 (4th Cir. 2021), however, a case in which a petitioner had filed a successful habeas petition seeking release from immigration detention, the Fourth Circuit held that attorneys' fees relating to a habeas petition are not available under the EAJA because such a petition is not a "civil action" for purposes of the EAJA. Id. at 191, 197. The Court, therefore, must deny Montoyo Palacios's request for attorneys' fees and costs under the EAJA.[5]

---

[5] Lastly, the Court adopts the reasoning set forth in Solis Nolasco, and concludes that where the Motion to Dismiss was simultaneously Respondents' Answer through a

## III.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Montoyo Palacios's Amended Petition for Writ of Habeas Corpus and request for TRO (ECF No. 4) and DENIES as MOOT the Government's Motion to Dismiss (ECF No. 15). A separate Order follows.

Entered this 22nd day of January, 2026.

                                                                      /s/
                                             George L. Russell, III
                                             Chief United States District Judge

---

single brief addressing both the Motion and the Answer (see ECF No. 15), the Court finds that (1) there was no need for a Motion to Dismiss; and (2) the Court's resolution of the Petition necessarily resolves the Motion to Dismiss. 2026 WL 25002, at *8. The Court, therefore, will deny the Government's Motion to Dismiss as moot.